Eastern District of Kentucky
F I L E D
JUN 2 3 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 04-396-GWU

EVA WARD, PLAINTIFF,

VS.  **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 CFR 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 CFR 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 CFR 404.1520(c), 404.1521, 416.920(c), 461.921.

1

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 CFR 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 CFR 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 CFR 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "more than a mere scintilla[; i]t means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion. . ." Wright v. Massanari, 321 F.3d 611, 614 (6th Cir. 2003) (quoting Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 535 (6th Cir. 1981). It is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 CFR Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Ward

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent

5

lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony

only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, who filed an application for SSI on September 29, 2000, had filed prior applications for SSI, the most recent of which had been denied in a decision by an Administrative Law Judge (ALJ) dated May 26, 2000. (Tr. 31-9). The ALJ reviewing the current application declined to reopen the prior application, and applied <u>res judicata</u> through the date of the prior decision. (Tr. 13). For the present period, Ward was found to have "severe" impairments consisting of low back pain with dextroscoliosis, a mood disorder, and a personality disorder. (Tr. 14). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 17-21). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if she were limited to "light level exertion", also needed the option of sitting or standing every 15 minutes, and had to avoid extreme heat. (Tr. 361). The VE responded that

7

Ward

there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 362).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition. Given that the prior application decision was not reopened and the current application had been filed in September, 2000 (Tr. 67-79), the plaintiff's status on and after that date is the most critical.[1]

Mrs. Ward alleged disability due to back pain originating from a fall at work in 1993. (Tr. 89). As of the time of the hearing, "not a day" would go by that she was not in pain. (Tr. 352). She also complained of her left leg would give out, carpal tunnel syndrome in her right arm, asthma, and "nerves." (Id.). At the administrative hearing, she admitted that her asthma problem had been present since she was a child (Tr. 353-4), and elsewhere in the record it appears that she continued to smoke one pack of cigarettes a day (e.g., Tr. 189, 196).

Regarding the plaintiff's "nerves," the only evidence comes from the report of Dr. Kevin Eggerman, who did not observe depression, and noted only mild anxiety in a January 8, 2001 examination. (Tr. 221-6). He felt that the plaintiff would have at least a "fair" ability to make occupational, performance, and personal-social type

---

[1] The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date. Casey v. Secretary of Health and Human Services, 987 F.2d 1230, 1233 (6th Cir. 1993).

8

adjustments. (Tr. 226). State agency reviewers concluded that Mrs. Ward did not even have a "severe" mental impairment. (Tr. 284, 298). Therefore, the ALJ was justified in finding no mental restriction.

Medical evidence in the transcript includes office notes and a residual functional capacity assessment by Dr. C. A. Moore, the plaintiff's treating family physician. Dr. Moore completed an assessment dated June 28, 2001, which, among other things, limits the plaintiff to lifting no more than 10 pounds, standing and walking less than two hours in an eight hour day, sitting less than two hours in an eight hour day, needing to change positions every 15 to 20 minutes, needing to lie down at intervals during the work shift, never twisting, bending, crouching, or climbing ladders, occasionally climbing stairs, and having a limited ability to push and pull. (Tr. 241-3). The only reason given for the restrictions was "L/S deg disc" and "pain on PE." (Tr. 242). As the ALJ noted, Dr. Moore's office notes provide very little detail and, during 2000 and 2001 primarily concerned a referral for gynecological problems (Tr. 246-52), which were eventually addressed by a total abdominal hysterectomy. The office notes and operative report from the physician to perform gynecological surgeries, Dr. Lawrence Butcher, did not suggest any permanent impairments. (Tr. 189-91, 204, 210). Regarding the "L/S pain" cited by Dr. Moore, his office notes do not show any objective findings, merely the plaintiff's objective complaints of pain, and prescriptions for medications. (E.g., Tr. 248). An MRI of the cervical spine from May, 1998 was contained in the office notes and was described

as a "negative study." (Tr. 274). A December, 1997 x-ray of the thoracic spine showed "small marginal spurs...at the level of T4 to T9" but normal height and alignment of the vertebrae and normal disc spaces. (Tr. 276). Under the circumstances, the ALJ could reasonably have found that Dr. Moore's severe restrictions were not supported by objective findings in his office notes.

The only other physical examination to take place near the relevant period was conducted by Dr. Stephen Lamb on Dec. 9, 2000. (Tr. 195). The plaintiff complained of asthma all her life and shortness of breath after walking 100 yards, but admitted that she had smoked impact of cigarettes a day for 20 years. (Tr. 195-6). A pulmonary function test was within normal limits. (Tr. 199). Mrs. Ward described back pain since 1993, after slipping and falling at work, as well as a history of carpal tunnel syndrome. (Tr. 195). Dr. Lamb's physical examination showed a normal gait, slightly less grip on the left than on the right, and a wasting of the thenar eminence on the left side. (Tr. 196-7).[2] However, there was a normal pinch grip and interosseous muscle strength. (Tr. 197). He also found a diminished dorsalis pedis pulse and femoral bruit in the right leg. (Tr. 196-7). However, her reflexes were equal, and there was no sensory deficit, spasm, or decreased range of motion. (Tr. 197). Lumbosacral spine x-rays showed only slight lipping with no appreciable joint space narrowing. (Tr. 197). Dr. Lamb concluded that while there was some

---

[2]The thenar eminence is the mound on the palm of the hand at the base of the thumb. Dorland's Illustrated Medical Dictionary (27th Edition), p.1705.

10

Ward

evidence for degenerative joint disease, there was no evidence of impairment, nor was there any impairment related to the plaintiff's complaints of shortness of breath. (Tr. 198).

Therefore, the evidence supports the ALJ's choice of physical restrictions. While the plaintiff argues that there is evidence to the contrary in several prior opinions rendered by Dr. Christa U. Muckenhausen in 1993, 1994, and 1997 (Tr. 321-37),[3] the ALJ could reasonably have disregarded these opinions as remote from the relevant time period, as well as being poorly supported by objective findings and inconsistent with the more recent examination by Dr. Lamb.

The decision will be affirmed.

This the 23 day of June, 2005.

G. WIX UNTHANK
SENIOR JUDGE

---

[3] The most recent of these opinions, dated July 9, 1997, limits the plaintiff to less than sedentary level exertion in addition to other restrictions. (Tr. 331). END

11